IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEJANDRO GARCIA DE LA PAZ, | ) ) ) | |
| Plaintiff, | ) ) | CV. NO. SA-12-CV-00957-DAE |
| vs. | ) ) | |
| United States Custom and Border Protection Officers JASON COY and MARIO VEGA and THE UNITED STATES OF AMERICA, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART AND DENYING WITHOUT PREJUDICE
IN PART MOTION TO DISMISS AND/OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT OF DEFENDANTS VEGA AND COY; (2)
GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
AND/OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OF
DEFENDANT UNITED STATES OF AMERICA; AND (3) GRANTING
PLAINTIFF'S RULE 56(d) MOTION FOR DISCOVERY

On May 31, 2013, the Court heard a Motion to Dismiss and/or, in the

Alternative, Motion for Summary Judgment filed by Defendants Jason Coy

("Coy") and Mario Vega ("Vega") (collectively, "the Agents") (doc. # 12); a

Motion to Dismiss and/or, in the Alternative, Motion for Summary Judgment filed

by Defendant United States of America ("United States") (doc. # 13); and Plaintiff

Alejandro Garcia de la Paz's ("Plaintiff") Rule 56(d) Motion for Discovery (doc. # 22).  David Anton Armendariz, Esq., and Lance Edward Curtright, Esq., appeared at the hearing on behalf of Plaintiff; Joseph Cuauhtemoc Rodriguez, Esq., appeared at the hearing on behalf of Defendants Coy, Vega, and the United States (collectively, "Defendants").  After reviewing the Motions and the supporting and opposing memoranda, the Court **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** the Agents' Motion, **GRANTS IN PART** and **DENIES IN PART** the United States's Motion, and **GRANTS** Plaintiff's Motion.

<u>BACKGROUND</u>

This lawsuit arises from a traffic stop that occurred on the afternoon of October 11, 2010, at the intersection of Ranch Road 187 and Ranch Road 337. Plaintiff is Hispanic.  ("Compl.," Doc. # 1 ¶ 12.)  According to Plaintiff, on October 11, 2010, he was a passenger in the front seat of a red Ford F150 truck ("the Truck") with an extended cab.  (Compl. ¶ 17.)  Plaintiff asserts that this kind of truck is "extremely common in Texas."  (<u>Id.</u> ¶ 18.)  The Truck was not altered in any way or for any special purpose—for example, to carry heavy loads—and the Truck's windows were not tinted or altered to obscure visibility.  (<u>Id.</u> ¶¶ 19, 20.) The Complaint states that visibility into the cab through the windows was clear and unobstructed.  (<u>Id.</u> ¶ 21.)  According to Plaintiff, the Truck was traveling in

2

accordance with applicable state traffic rules and regulations.  (Id. ¶ 32.)

   Omar Hernandez was driving the Truck, and there were two other passengers in addition to Plaintiff: Miguel Cortez and a man named Marcos, both sitting upright in the rear seat.  (Id. ¶ 22.)  The four men were returning from work near Vanderpool, Texas.  (Id. ¶ 23.)  According to Plaintiff, they had left the work site in the late afternoon to return to San Antonio.  (Id.)  They were originally traveling north on Ranch Road 187, and then turned right onto Ranch Road 337, going east.  (Id. ¶¶ 24–28.)  The Complaint states that the intersection of those two roads is more than 100 miles from the Mexican border.  (Id. ¶ 28.)  It further alleges that both roads are traveled by thousands of people daily, many of whom are Hispanic.  (Id. ¶ 29.)  The Complaint alleges that the "overwhelming majority" of people traversing those roads do so for lawful purposes and are United States citizens or non-citizens present in the United States legally.  (Id. ¶¶ 30, 31.)  It further alleges that there are no characteristics particular to that stretch of road that makes it more likely to be used as a route for illegal activity than other roads within Texas.  (Id. ¶¶ 73, 74.)

   According to Plaintiff, Coy and Vega—agents with United States Customs and Border Protection ("CBP")—were on patrol duty, driving south on Ranch Road 187 in separate patrol cars, when they saw the Truck.  (Id. ¶¶ 33, 34.)

The Complaint alleges that the Agents saw the Truck, and "[b]ased principally upon their perception that the Truck had a Hispanic driver and other Hispanics inside," decided to pull it over and interrogate the occupants shortly after it turned onto Ranch Road 337.  (Id. ¶ 42.)  Accordingly, the Agents began following the Truck.  Plaintiff claims that Hernandez (the driver) continued looking forward at the road and neither Plaintiff nor the two men in the rear seat of the Truck made any bodily movements out of the ordinary.  (Id. ¶¶ 44, 45.)  When the Agents turned on their vehicles' emergency lights, Hernandez brought the Truck to a stop promptly.  (Id. ¶ 48.)

Plaintiff alleges that, after Hernandez brought the Truck to a stop, the Agents exited their vehicles and Coy approached the Truck's passenger side and Vega the driver's side.  (Id. ¶¶ 63, 64.)  Without any explanation for the stop, Vega asked whether the occupants were United States citizens.  (Id. at 64.)  According to the Complaint, when Plaintiff answered the question, Coy opened the passenger door, grabbed Plaintiff by the upper arm, pulled him out of the Truck and directed him to Coy's patrol car.  (Id. ¶¶ 65, 66.)  Plaintiff asserts that the Agents did not have a warrant for his arrest or any reason to believe Plaintiff was likely to escape before an arrest warrant could be obtained.  (Id. ¶¶ 68, 72.)  The Complaint alleges that Coy and Vega never searched the Truck for drugs or contraband;

4

communicated with their agency to determine whether the agency had any

information relating to Plaintiff or the Truck; or undertook any investigation

specific to Plaintiff.  (Id. ¶¶ 69–72.)

On October 9, 2012, Plaintiff filed the instant Complaint.  (Compl.)

The Complaint asserts causes of action against Coy, Vega, and the United States

pursuant to the Declaratory Judgment Act and the Administrative Procedures Act

for violations of 8 U.S.C. §§ 1357(a)(2) and (a)(3); claims against the United

States under the Federal Tort Claims Act ("FTCA") for false imprisonment and

assault; and claims against the Agents for violations of the Fourth Amendment

pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,

403 U.S. 388 (1971).  On January 14, 2013, the Agents filed the Motion to Dismiss

and/or, in the Alternative, Motion for Summary Judgment that is currently before

the Court.  ("Agents' MSJ," Doc. # 12.)  That same day, the United States filed

their own Motion to Dismiss and/or, in the Alternative, Motion for Summary

Judgment.  ("U.S. MSJ," Doc. # 13.)  On February 4, 2013, Plaintiff filed a Rule

56(d) Motion for Discovery.  (Doc. # 22.)

## LEGAL STANDARD

I.      Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

II.    Rule 12(b)(1) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. The plaintiff, as the party asserting jurisdiction, bears the burden of proving that subject matter jurisdiction exists.  Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).  A district court may dismiss for lack of subject matter

7

jurisdiction on any one of the following bases:  "(1) the complaint alone; (2) the

complaint supplemented by undisputed facts evidenced in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed

facts."  Voluntary Purchasing Grps., Inc. v. Reilly, 889 F.2d 1380, 1384 (5th Cir.

1989).  However, "a motion to dismiss for lack of subject matter jurisdiction

should be granted only if it appears certain that the plaintiff cannot prove any set of

facts in support of his claim that would entitle plaintiff to relief."  Ramming v.

United States, 281 F.3d 158, 161 (5th Cir. 2001).

III.   Motion for Summary Judgment

        Summary judgment is granted under Federal Rule of Civil Procedure

56 when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).

The main purpose of summary judgment is to dispose of factually unsupported

claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

        The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact.  Id. at 323.  If the moving party

meets this burden, the non-moving party must come forward with specific facts

that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v.

Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In

deciding whether a fact issue has been created, "the court must draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th

Cir. 2003).

"Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

DISCUSSION

I.     The Agents' Motion

The Agents seek dismissal of, or summary judgment on, each of

Plaintiff's claims against them.

A.     Plaintiff's Claims for Declaratory Relief

Coy and Vega seek dismissal of Plaintiff's claims for declaratory

relief against them, arguing that "an official capacity suit cannot be filed against

9

individual federal employees." (Agents' MSJ at 2.) In response, Plaintiff

concedes that the Agents "are not the proper defendants as to [Plaintiff's] claims

for declaratory relief," and agrees that dismissal of those claims insofar as they are

asserted against Coy and Vega is proper. (Id. at 25.) Plaintiff's claims for

declaratory relief against the Agents are therefore **DISMISSED**.

      B.    <u>Plaintiff's Bivens Claims</u>

      The Agents seek dismissal of or summary judgment on Plaintiff's

<u>Bivens</u> claims on three grounds. First, relying on <u>Mirmehdi v. United States</u>, 689

F.3d 975 (9th Cir. 2012), the Agents contend that Plaintiff may not bring a <u>Bivens</u>

action because there is an alternative process by which he may protect his interests:

his pending removal proceeding. (Doc. # 40 at 1 n.1.) Second, the Agents argue

that the Court lacks subject matter jurisdiction over Plaintiff's <u>Bivens</u> claims under

8 U.S.C. §§ 1252(b)(9) and 1252(g). (Id. at 4–5.) Finally, the Agents assert that

they are entitled to qualified immunity. The Court will address each argument in

turn.

      1.    <u>Mirmehdi v. United States</u>

      In <u>Mirmehdi v. United States</u>, the plaintiffs—Mohammad, Mostafa,

Mohsen, and Mojtaba Mirmehdi (collectively, the "Mirmehdis")—were arrested

for immigration violations after their attorney told federal authorities that they

supported an Iranian terrorist group.  689 F.3d at 979.  The Mirmehdis challenged

the charges against them on direct appeal of their detention, during the proceedings

related to their asylum applications, and in a federal petition for a writ of habeas

corpus.  Id.  After they were released, the Mirmehdis brought a Bivens claim

against two federal agents for unlawful detention.  Id. at 980.  The court of appeals

was thus squarely presented with what had been an "open question" in the Ninth

Circuit: does an immigrant have the right to pursue a Bivens action for wrongful

detention pending deportation?  Id. at 980, 980 n.2.  The court observed that,

before turning to "the issue of whether [it] ought to extend Bivens to such a

context," it should address that issue's "logical predicate": "whether [it] would

need to extend Bivens in order for illegal immigrants to recover for unlawful

detention during deportation proceedings."  Id. at 981.  Noting that the Mirmehdis

challenged their detention during deportation and habeas proceedings, the court

found that there were "alternative, existing process[es] for protecting the plaintiffs'

interests."  Id. at 982.  Accordingly, it "decline[d] to extend Bivens to allow the

Mirmehdis to sue federal agents for wrongful detention pending deportation given

the extensive remedial procedures available to and invoked by them and the unique

foreign policy considerations implicated in the immigration context."  Id. at 983.

The Agents urge this Court to find that Mirmehdi bars Plaintiff from

bringing a <u>Bivens</u> action against them.  At the hearing, Plaintiff's counsel

represented to the Court that Plaintiff is subject to removal proceedings.  The

Agents argue that because Plaintiff may challenge the constitutionality of the

traffic stop and subsequent arrest through that process, he has alternative remedial

procedures available to him and therefore cannot bring a <u>Bivens</u> action.  In

response, Plaintiff contends that <u>Mirmehdi</u> is "entirely inapplicable to this case."

(Doc. # 41.)  The Court agrees that <u>Mirmehdi</u> is distinguishable.  In that case, the

Ninth Circuit confronted a very narrowly drawn issue: whether it was necessary to

"extend <u>Bivens</u> in order for illegal immigrants to recover for unlawful detention

during deportation proceedings."  <u>Mirmehdi</u>, 689 F.3d at 981.  Having answered

that question in the negative, the court declined to extend <u>Bivens</u> <u>only</u> in the

context of claims for wrongful detention pending deportation.  Plaintiff in the

instant case has not brought a claim for unlawful detention.  Indeed, unlike a claim

for wrongful detention pending deportation, the claims in this case did not stem

from the deportation process; the alleged constitutional violations of which

Plaintiff complains preceded the initiation of deportation proceedings.  <u>Mirmehdi</u>

is also distinguishable because in that case the plaintiffs <u>had already invoked</u> the

deportation appeals process and sought federal habeas relief.  <u>Id.</u> at 982 ("The

Mirmehdis could—and did—challenge their detention through not one but two

12

different remedial systems."); <u>Dukureh v. Hullett</u>, No. C11-1866, 2012 WL 3154966, at *5 (W.D. Wash. Aug. 2, 2012) (holding that <u>Mirmehdi</u> barred the plaintiff's Fourth Amendment claims in part because the plaintiff "had <u>and exercised</u> alternative remedies") (emphasis added).  Here, by contrast, no alternative remedial process has been invoked.  Plaintiff may be able to challenge the constitutionality of the Agents' seizure through the deportation proceedings the government has initiated, but as far as this Court is aware, Plaintiff has not yet had the opportunity to do so.

Given the limited holding in <u>Mirmehdi</u>—tailored to the specific factual situation presented in that case—and the factual distinctions between <u>Mirmehdi</u> and this case, the Court is not convinced that the Ninth Circuit intended to bar an alien in Plaintiff's position from bringing a <u>Bivens</u> action.  Moreover, the Court is not bound by decisions of the Ninth Circuit, and to the extent an opinion from that circuit conflicts with the law in this circuit, the Court must follow Fifth Circuit precedent.  The Fifth Circuit has never confronted the precise issue addressed in <u>Mirmehdi</u>, but it has allowed an alien subject to deportation proceedings to bring <u>Bivens</u> claims against federal agents for involuntary servitude and mistreatment while in detention.  See <u>Humphries v. Various Fed. USINS Emps.</u>, 164 F.3d 936, 944 (5th Cir. 1999).  Accordingly, the Court concludes that

13

<u>Mirmehdi</u> does not preclude Plaintiff from bringing a <u>Bivens</u> claim for unlawful seizure.

       2.     <u>Subject Matter Jurisdiction</u>

       The Agents also contend that the Immigration and Nationality Act ("INA")—specifically, sections 1252(b)(9) and 1252(g)—deprives this Court of subject matter jurisdiction over Plaintiff's <u>Bivens</u> claims.  (Doc. # 40 at 4–5.)

       i.     <u>Section 1252(b)(9)</u>

       Section 1252(b)(9) of the INA provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this chapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).  "As its text makes manifest," this provision "was designed to consolidate and channel review of <u>all</u> legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." <u>Aguilar v. United States Immigration & Customs Enforcement</u>, 510 F.3d 1, 9 (1st Cir. 2007); <u>see also</u> <u>Foster v. Townsley</u>, 243 F.3d 210, 213 (5th Cir. 2001) (observing that § 1252(b)(9) "acts as a 'zipper clause' by channeling judicial review of all decisions and actions" of the INS).

14

In <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 314 (2001), the Supreme Court observed that section 1252(b)(9) "applies only '[w]ith respect to review of an order of removal under [section 1252(a)(1)].'" Accordingly, the majority of appellate courts that have addressed its scope have concluded that section 1252(b)(9) applies only to claims seeking judicial review of orders of removal.  See <u>Chehazeh v. Attorney Gen. of the United States</u>, 666 F.3d 118, 133 (3d Cir. 2012) ("We therefore . . . hold that § 1252(b)(9) applies only '[w]ith respect to review of an order of removal under subsection [1252(a)(1)].') (quoting 8 U.S.C. § 1252(b)); <u>Singh v. Gonzales</u>, 499 F.3d 969, 978 (9th Cir. 2007) ("By virtue of [its] explicit language, . . . [section] 1252(b)(9) [applies] only to those claims seeking judicial review of orders of removal."); <u>Madu v. United States Attorney Gen.</u>, 470 F.3d 1362, 1367 (11th Cir. 2006) ("Because section 1252(b)(9) applies only '[w]ith respect to review of an order of removal,' and this case does not involve review of an order of removal, we find that section 1252(b)(9) does not apply to this case."); <u>see also</u> <u>Ochieng v. Mukasey</u>, 520 F.3d 1110, 1115 (10th Cir. 2008) (stating in dicta that section 1252(b)(9) would not apply in that case because the petitioner "would not be seeking review of an order of removal, but review of his detention").

The First Circuit arrived at a different conclusion, determining that section 1252(b)(9) "cannot be read to swallow all claims that might somehow

touch upon, or be traced to, the government's efforts to remove an alien," but rejecting the argument that its reach is "limited to challenges to singular orders of removal or to removal proceedings simpliciter."  Aguilar, 510 F.3d at 9, 10.  It "thus read the words 'arising from' in section 1252(b)(9) to exclude" only those "claims that are independent of, or wholly collateral to, the removal process."  Id. at 11.  Accordingly, the court in Aguilar concluded that section 1252(b)(9) stripped the district court of jurisdiction to hear claims for violations of the petitioners' right to counsel during removal proceedings, but did not bar the petitioners' claims alleging violations of their Fifth Amendment right to make decisions as to the care, custody and control of their children.  Id. at 18–19.  The court noted that procedural due process rights—such as the right to counsel—"'arise from' removal in that they are part of the fabric of the removal proceedings themselves," and neither "independent of, [nor] collateral to, removal proceedings," while claims relating to the Fifth Amendment right to family integrity are entirely collateral to removal.  Id. at 18.

The Agents cite to Aguilar and urge the Court to find that Plaintiff's Fourth Amendment claims are barred under section 1252(b)(9).  The First Circuit's reading of that section would most likely strip this Court of jurisdiction over Plaintiff's constitutional claims.  The traffic stop Plaintiff challenges as an

unreasonable seizure and his subsequent arrest are not related to "the fabric of the removal proceedings itself." Id. at 18.  However, as the traffic stop ultimately led to the initiation of removal proceedings, it can hardly be called wholly independent of or collateral to said proceedings.  Furthermore, unlike the issue of family integrity in Aguilar, the reasonableness of the traffic stop at issue in this case is not "completely irrelevant to the mine-run of issues that will be litigated in removal proceedings," see id. at 19, and it has some bearing on Plaintiff's immigration status—if the traffic stop at issue was, as Plaintiff claims, made without reasonable suspicion, the fruits of that illegal seizure may be suppressed.

However, as the Third Circuit noted in Chehazeh, Aguilar appears to conflict with the Supreme Court's "explicit instruction" that section 1252(b)(9) "applies only '[w]ith respect to review of an order of removal under [section 1252(a)(1)].'" Chehazeh, 666 F.3d at 133 (quoting St. Cyr, 533 U.S. at 313).  This Court will not, therefore, follow Aguilar, and will instead adhere to the interpretation of section 1252(b)(9) advanced by the Third, Ninth, and Eleventh Circuits, which is consistent with St. Cyr.  Because Plaintiff here is not seeking review of an order of removal—like the petitioner in Chehazeh, "there has been no such order with respect to him"—section 1252(b)(9) does not preclude judicial review of Plaintiff's constitutional claims.

ii.   Section 1252(g)

Section 1252(g) of the INA, titled "Exclusive jurisdiction," states:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  In Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482 (1999) ("AADC"), the Supreme Court interpreted section 1252(g) narrowly, concluding that—unlike section 1252(b)(9)—it is not a "zipper clause" channeling or precluding judicial review of all claims arising from deportation proceedings.  Instead, section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  Id. at 482.  The Court noted that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings," particularly given that there are "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, [and] to reschedule the deportation hearing. . . ."  Id.

The Agents contend that section 1252(g) strips this Court of

18

jurisdiction over Plaintiff's Fourth Amendment claims.  (Doc. # 40 at 4.)  They cite

to <u>Sissoko v. Rocha</u>, 509 F.3d 947, 949 (9th Cir. 2007), in which the Ninth Circuit

held that the plaintiff's Fourth Amendment false arrest claim was barred by section

1252(g).  In that case, the plaintiff, a citizen of Senegal and longtime resident of

the United States, was detained for four months after an immigration inspector

determined that he qualified for expedited removal.  <u>Sissoko</u>, 509 F.3d at 949.  The

Ninth Circuit concluded that, considering the circumstances, "particularly the

existence in the record of a half-completed [Notice and Order of Expedited

Removal]," the detention challenged by the plaintiff as unlawful "arose from [the

immigration inspector's] decision to commence expedited removal proceedings."

<u>Id.</u>

          The Agents argue that Plaintiff's constitutional claims are similarly

barred by section 1252(g) because they arise from the Agents' decision to

commence removal proceedings.  The Court disagrees.  In <u>Sissoko</u>, the plaintiff

was challenging his allegedly unlawful detention, which came about because the

immigration inspector determined that he qualified for expedited removal.  509

F.3d at 949.  The plaintiff's claim was therefore based on an injury that arose

<u>directly</u> from the inspector's decision to commence removal proceedings.  In this

case, Plaintiff's injuries—the alleged Fourth Amendment violations—preceded the

decision to commence removal proceedings.  The Agents appear to argue that the

traffic stop nevertheless arose from a decision to commence proceedings because

Plaintiff was, at the time the challenged seizure occurred, subject to removal as an

alien present in the country illegally.[1]  The Agents do not cite to any authority

supporting this argument, and the Court finds it unpersuasive.  The Supreme Court

read 1252(g) narrowly in <u>AADC</u>, limiting it to only the three discrete actions

explicitly mentioned in the statute and excluding "other decisions or actions that

may be part of the deportation process," such as the decision to open an

investigation and the decision to surveil a suspected violator.  <u>AADC</u>, 525 U.S. at

482.  The Court concludes that Plaintiff's <u>Bivens</u> claims arise from actions in the

latter category, and do not fall within the ambit of section 1252(g).  Accordingly,

the Court is not barred from hearing Plaintiff's claims.

   3. <u>Qualified Immunity</u>

    Plaintiff's <u>Bivens</u> claims assert that the Agents violated his right,

secured by the Fourth Amendment, to be free from unreasonable seizure when they

---

[1] Presumably that is the argument the Agents are attempting to make when they point out that Plaintiff was, by operation of law, an "applicant for admission" subject to mandatory inspection under 8 U.S.C. § 1225, and state that "Plaintiff was examined at an 'office' about his right to remain in the United States, was asked to sign a 'voluntary departure' form, and was placed in 'detention' when he refused to sign the form."  (Doc. # 40 at 4.)

stopped the Truck without reasonable suspicion and arrested him without probable cause.  Qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity standard gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991).  In suits brought under federal law, government employees are presumptively entitled to the defense of qualified immunity, and once the defense is asserted the burden shifts to the plaintiff to show that immunity does not bar recovery.  Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992); Bennett v. City of Grand Prairie, Tex., 883 F.2d 400, 408 (5th Cir. 1989).

The Agents contend that they are entitled to qualified immunity because: (1) they had reasonable suspicion to stop the Truck and probable cause to arrest Plaintiff, and thus Plaintiff's Fourth Amendment rights were not violated; and (2) even if there was a Fourth Amendment violation, their conduct was objectively reasonable.  (Agents' MSJ at 4–14.)  Although the Agents argue that Plaintiff has failed to plead facts sufficient to defeat a qualified immunity defense, their arguments rely primarily upon evidence outside the pleadings; specifically,

21

declarations executed by Coy and Vega that they claim show that "the facts known to [them] demonstrate that . . . they had reasonable suspicion for the stop. . . ." (Id. at 5.)  In response, Plaintiff argues that, to the extent the Agents seek summary judgment on the issue of qualified immunity, their motion is premature and must be deferred until after Plaintiff has had an opportunity to conduct discovery.[2]

        "One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit." Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992); see also Siegert v. Gilley, 500 U.S. 226, 232 (1991) (same).  Consequently, "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  Saucier v. Katz, 533 U.S. 194, 200 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009).  In particular, the doctrine is designed to protect public officials from "the broad-ranging discovery that can be peculiarly disruptive of effective government."  Anderson v. Creighton, 483 U.S. 635, 646 n. 6 (1987) (internal quotations omitted).  The Fifth Circuit has thus "established a

---

[2]  Plaintiff has filed a motion seeking to delay adjudication of Defendants' motions until after he has had an opportunity to take discovery (doc. # 22), which the Court will address in greater detail below.

careful procedure" for determining whether a defendant is entitled to qualified immunity.  Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012).

District courts are instructed to first determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."  Wicks v. Miss. State Emp't Servs., 41 F.3d 991, 994 (5th Cir. 1995). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."  Backe, 691 F.3d at 648.  If the district court finds that a plaintiff has so pled, but "remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"  Id. (quoting Lion Boulos v. Wilson, 834 F.2d 507–08 (5th Cir. 1987)).

Accordingly, this Court will first assess whether the Complaint alleges facts adequate to defeat the Agents' qualified immunity defense.  In order to defeat the defense, Plaintiff must allege facts that, if proven, would demonstrate that Coy and Vega violated clearly established constitutional rights.  Wicks, 41 F.3d at 995.

           i.       Did the Agents' alleged conduct violate a constitutional right?

In <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 884 (1975), the Supreme Court held that, except at the border, the Fourth Amendment forbids officers from stopping a vehicle to question its occupants about their immigration and citizenship status unless the officers "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." Reasonable suspicion may be based on a number of factors, including, but not limited to

> (1) characteristics of the area where the vehicle is encountered; (2) proximity to the border; (3) the usual traffic pattern on the road; (4) previous experience with criminal activity; (5) information about recent criminal activity in the area; (6) the driver's behavior; (7) the appearance of the vehicle, its type and whether it appears loaded; and (8) the number, appearance and behavior of the passengers.

<u>United States v. Chavez-Chavez</u>, 205 F.3d 145, 148 (5th Cir. 2000). "[T]he apparent Mexican ancestry of the occupants of a vehicle" is a relevant factor, but not sufficient on its own to furnish reasonable suspicion. <u>Brignoni-Ponce</u>, 422 U.S. at 885–86. "<u>No single factor is determinative</u>; the totality of the particular circumstances must govern the reasonableness of any stop by roving border patrol officers." <u>United States v. Morales</u>, 191 F.3d 602, 604 (5th Cir. 1999) (quoting

United States v. Moreno-Chaparro, 180 F.3d 629, 631–32 (5th Cir. 1998)).

Furthermore, "[i]n all situations the officer is entitled to assess the facts in light of

his experience in detecting illegal entry and smuggling." Brignoni-Ponce, 422

U.S. at 885.

        The Fifth Circuit has "often held that, for obvious reasons, the

proximity of the stop to the border is the 'paramount factor' to consider; and that

this factor 'is missing' if the stop is, as here, more than 50 miles from the border."

Morales, 191 F.3d at 606 (quoting United States v. Aldaco, 168 F.3d 148, 150 (5th

Cir. 1999)); United States v. Inocencio, 40 F.3d 716, 722 (5th Cir. 1995) ("[T]his

Court frequently focuses on . . . whether an arresting agent could reasonably

conclude that a particular vehicle originated its journey at the border.").  In this

case, there is no dispute that the stop occurred more than 50 miles from the border.

(See Agents' MSJ at 6.)  However, "Brignoni-Ponce may still be satisfied if other

articulable facts warrant reasonable suspicion." Inocencio, 40 F.3d at 722.

        The Complaint alleges that the road on which the Truck was traveling

is traveled by thousands of people daily, and has no characteristics that make it

more likely than others to be used as a route for illegal activity.  (Compl. ¶¶ 30, 31,

73, 74.)  It asserts that the driver behaved normally, keeping his eyes on the road

when the Agents began following the Truck.  (Id. ¶¶ 44, 45.)  It also alleges that

the occupants of the Truck never attempted to hide themselves from view, the

Truck itself never made any movements out of the ordinary or sped up, slowed

down, or changed lanes.  (Id. ¶¶ 59–62.)  According to the Complaint, the Truck

was a very common model and was not altered for any special purpose.  (Id. ¶¶ 17,

18, 19, 20, 21.)  Furthermore, Plaintiff alleges that he and his companions were not

driving at an unusual time of day; it was apparently late afternoon.  (Id. ¶ 23.)

Finally, the Complaint directly alleges that the Agents stopped the Truck because

its driver and passenger were Hispanic.  (Id. ¶ 42.)

            These factual allegations, taken in the light most favorable to Plaintiff,

show that the Agents violated his right, secured by the Fourth Amendment, to be

free from unreasonable seizure.  Plaintiff alleges that Coy and Vega stopped the

Truck solely on the basis of the occupants' ethnicity, which is not sufficient to

furnish reasonable suspicion.  Brignoni-Ponce, 422 U.S. at 885–86 (holding that

"the apparent Mexican ancestry" of a vehicle's occupants does not "furnish[]

reasonable grounds to believe that the . . . occupants [are] aliens").  Plaintiff's other

allegations regarding the circumstances surrounding the stop reveal that the other

factors tending to establish reasonable suspicion were not present; according to the

Complaint, there was nothing unusual or suspicious about the Truck, its occupants,

or the situation.  The only factors not specifically precluded by Plaintiff's

allegations are the Agents' previous experience with criminal activity and information about recent criminal activity in the area.  However, those factors alone cannot establish reasonable suspicion absent specific articulable facts that suggest that the vehicle in question contains aliens in the country illegally.  See United States v. Olivares-Pacheco, 633 F.3d 399, 404 (5th Cir. 2011) ("Absent articulable observations about a vehicle, its operator, its operation, or its cargo, however, experience alone cannot supply reasonable suspicion."); Chavez-Chavez, 205 F.3d at 148 ("[T]he fact that a road has been used by alien smugglers is alone insufficient to justify a stop.").

As for Plaintiff's claim for false arrest, the Agents argue that they are entitled to qualified immunity because they had probable cause to arrest him. (Agents' MSJ at 13.)  The Agents maintain that they arrested Plaintiff only after he told them that he: (1) was not a United States citizen; (2) was born in Mexico; and (3) had no documents justifying his presence in the United States.  (Id.)  Plaintiff disputes these allegations, contending that when the Agents arrested him he had admitted only that he was not a United States citizen.  (Doc. # 33 at 23.)  Plaintiff further argues that, in any event, "[e]verything that transpired between [the Agents] and [Plaintiff] was a product of the preceding illegal seizure of the Truck," and that the arrest was therefore unlawful as "[t]here can be no legal arrest that is subsumed

27

within a continuing illegal seizure." (Id.)   Plaintiff is correct.  The legality of his

arrest depends upon the legality of the traffic stop that preceded it.  If the Agents

lacked reasonable suspicion to stop the Truck, Plaintiff's subsequent arrest was

unlawful.  C.f. Wong Sun v. United States, 371 U.S. 471, 484 (1963) (holding that

an unlawful entry invalidates a subsequent arrest); see also id. ("A contrary holding

here would mean that a vague suspicion could be transformed into probable cause

for arrest by reason of . . . conduct which the arresting officers themselves have

provoked.").  Given that the Complaint alleges facts that, if proven, demonstrate

that the Agents stopped the Truck without reasonable suspicion, the Complaint's

allegations are sufficient to show that the Agents also violated Plaintiff's Fourth

Amendment rights by subjecting him to an unlawful arrest.

> ii.    Was the right clearly established?

Having found that the Complaint adequately alleges that Plaintiff's

constitutional right to be free from unreasonable seizures was violated, the Court

must determine whether that right was clearly established.  Saucier, 533 U.S. at

201 ("[I]f a violation could be made out on a favorable view of the parties'

submissions, the next, sequential step is to ask whether the right was clearly

established.").  "The relevant, dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted."  Id. at 202.  The Fifth Circuit has observed that "[t]he central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"  Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)).

The Complaint alleges that the Agents stopped the Truck and questioned its passengers solely on the basis of their race.  According to Plaintiff, there was nothing out of the ordinary about the truck, its occupants, or the surroundings that would have justified the stop.  Accepting Plaintiff's allegations as true, the Court concludes that no reasonable officer would have believed it was lawful to detain the Truck for investigatory purposes under the circumstances alleged in the Complaint.  At the time of the stop, it was clearly established that a border patrol agent cannot detain a vehicle based on the Hispanic appearance of its occupants.  The Court therefore **DENIES** the Agents' motion insofar as it seeks dismissal of Plaintiff's Bivens claims pursuant to Rule 12(b)(6).

iii.    Should Plaintiff be permitted to take discovery?

Plaintiff alleges facts sufficient to defeat qualified immunity.  The Agents would nevertheless have the Court dismiss Plaintiff's <u>Bivens</u> claims or enter summary judgment on the basis of evidence outside the pleadings.  Coy and Vega submitted declarations that they assert demonstrate that there was reasonable suspicion to stop the Truck in which Plaintiff was a passenger.  For example, the Agents claim that smugglers were known to frequent backroads like those on which Plaintiff and his companions were driving (Agents' MSJ at 6), and in the weeks prior to the stop at issue in this case, they "were aware of numerous complaints from ranchers and other persons about possible alien smuggling in the area" (<u>id.</u> at 9).  They contend that the driver of the Truck behaved suspiciously, turning onto another road and slowing down when he saw them, and looking at them so intently in his mirror that he began to swerve off the road.  (<u>Id.</u> at 11.)  The Agents also claim that they both had substantial experience detecting aliens and alien smuggling, and they were informed by that experience on the day in question. (<u>Id.</u> at 7–8.)

Plaintiff has filed a motion pursuant to Federal Rule of Civil Procedure 56(d) ("Rule 56(d)"), asking the Court to "deny Defendants' pre-answer, pre-discovery motions for summary judgment or, alternatively, suspend

consideration of the same to allow [Plaintiff] time to take discovery. . . ."  (Doc.
# 22 at 2.)  Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or
declaration that, for specified reasons, it cannot present facts essential to justify its
opposition, the court may: (1) defer considering the motion or deny it; (2) allow
time to obtain affidavits or declarations or to take discovery; or (3) issue any other
appropriate order."  Plaintiff submitted an affidavit identifying several categories
of evidence relied upon by the Agents that he is unable to respond to because he
has had no opportunity to take discovery.  Specifically, Plaintiff seeks to obtain
discovery related to Vega's claim that he was taught to look for certain specific
suspicious behavior; the extent of Vega and Coy's experience conducting roving
patrols and investigatory stops; the extent to which Roads 187 and 337 were used
for illegal smuggling; and the reports Coy and Vega claim to have received in the
weeks leading up to the stop about alien smuggling in the area.  (Doc. # 22 Ex. 1 at
1–2.)

        Where, as here, the Court has found that Plaintiff's Complaint alleges
facts sufficient to defeat qualified immunity, but Plaintiff has not yet had an
opportunity to take discovery, it would be premature to grant summary judgment to
the defendants.  See Schultea v. Wood,  47 F.3d 1427, 1433–34 (5th Cir. 1995)
("The district court need not allow any discovery unless it finds that plaintiff has

supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."). Accordingly, the Court **GRANTS** Plaintiff's Rule 56(d) motion for discovery. Plaintiff may engage in <u>limited</u> discovery, related only to those issues Plaintiff identified in his motion (doc. # 22 ex. 1 at 1–2). The Court **DENIES WITHOUT PREJUDICE** the Agents' motion insofar as it seeks summary judgment on Plaintiff's <u>Bivens</u> claims. Coy and Vega may re-file the motion after Plaintiff has had an opportunity to take discovery.

II.    <u>Defendant United States's Motion</u>

The United States seeks dismissal of or summary judgment on Plaintiff's claims on a number of grounds. First, the United States asserts that Plaintiff's FTCA claims must be dismissed for lack of subject matter jurisdiction because he failed to file an administrative tort claim alleging false imprisonment or assault prior to filing the instant action. (U.S. MSJ at 2.) Second, the United States argues that, even if Plaintiff did exhaust his administrative remedies, his claims should be dismissed because Plaintiff's claims fall within the detention-of-goods exception under the FTCA. (<u>Id.</u> at 6.) The United States also argues that Plaintiff's FTCA claims are barred by the unlawful acts doctrine. (<u>Id.</u> at 9.) Next, the United States contends that, in any event, Plaintiff has not stated actionable tort

claims under Texas law. (Id. at 7–9.) Finally, the United States argues that Plaintiff's claims for declaratory relief must be dismissed because the Declaratory Judgment Act does not provide an independent basis for relief. (Doc. # 36 at 3.)

As a preliminary matter, the Court notes that a motion for summary judgment is premature where, as here, no discovery has occurred and the defendant has not even filed an answer. "Summary judgment should not . . . ordinarily be granted before discovery has been completed." Xerox Corp. v. Genmoora Corp., 888 F.2d 345, 254 (5th Cir. 1989). Consequently, the Court will construe the United States's motion as a motion to dismiss Plaintiff's claims, and will not consider matters outside the pleadings.[3]

A. Failure to Exhaust Administrative Remedies

Under the Federal Tort Claims Act ("FTCA"),

[a]n action shall not be instituted upon a claim against the United States for money damages for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the

---

[3] With one exception: the Court will consider matters outside the pleadings that bear on the United States's argument that the Court lacks subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. See Robinson v. TCI/US W. Commc'ns Inc., 117 F.3d 900, 904 (5th Cir. 1997) ("A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

> claimant shall have first presented the claim to the appropriate Federal
> agency and his claim shall have been finally denied by the agency in
> writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  This exhaustion requirement "is a prerequisite to suit under

the FTCA."  <u>Life Partners Inc. v. United States</u>, 650 F.3d 1026, 1030 (5th Cir.

2011).  The United States claims that Plaintiff has not exhausted his administrative

remedies because he did not file an administrative claim with CBP specifically

alleging false imprisonment or assault.  (U.S. MSJ at 5.)  The administrative tort

claim filed with CBP described the facts and circumstances surrounding the traffic

stop in question but did not state that Plaintiff had been subjected to false

imprisonment or assault; the claim alleged only "an illegal race based stop" by

Vega and Coy.  (U.S. MSJ at 5; Agents' MSJ Ex. 1 at 32.)

        The Fifth Circuit does not require plaintiffs "to specifically enumerate

legal theories of recovery in their administrative claims."  <u>Frantz v. United States,</u>

29 F.3d 222, 224 (5th Cir. 1994).  The purpose of § 2675 of the FTCA

> will be served as long as a claim brings to the Government's attention
> facts sufficient to enable it thoroughly to investigate its potential
> liability and to conduct settlement negotiations with the claimant.
> Accordingly, we think that if the Government's investigation of [the
> plaintiffs'] claim should have revealed theories of liability other than
> those specifically enumerated therein, those theories can properly be
> considered part of the claim.

Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1994).  Accordingly, as long as Plaintiff's administrative claim provided the government with enough information to conduct an investigation and to put it on notice of the possibility of a false imprisonment and an assault claim, those claims were exhausted.  Frantz, 29 F.3d at 225.  In this case, Plaintiff's administrative claim described the traffic stop in detail, including the fact that Coy grabbed him by the arm (the basis for Plaintiff's assault claim) and the fact that he was detained by the Agents following the allegedly illegal seizure (the basis for Plaintiff's false imprisonment claim). (Agents' MSJ Ex. 1 at 34.)  The Court therefore concludes that Plaintiff has exhausted his administrative remedies, and declines to dismiss Plaintiff's tort claims on this basis.

   B. The Detention-of-Goods Exception

    The FTCA provides that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . ."  28 U.S.C. § 2674.  However, the FTCA contains a number of exceptions, one of which is that the FTCA does not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement

officer. . . ."  28 U.S.C. § 2680(c).  The Supreme Court has interpreted this

provision to mean that any claim "'arising out of' the detention of goods" is

exempted.  Kosak v. United States, 465 U.S. 848, 854 (1984).  Accordingly, the

Fifth Circuit has held that intentional tort claims for assault, battery, and false

arrest and imprisonment are barred by the detention-of-goods exception "if the

alleged torts arose from the inspection, seizure, or detention of goods by a Customs

agent because such claims involve conduct covered by § 2680(c)."  Jeanmarie v.

United States, 242 F.3d 600, 604 (5th Cir. 2001).  The Fifth Circuit has also

interpreted § 2680(c) very broadly "to preclude suits for damages arising out of the

allegedly tortious activities of IRS agents when those activities were in any way

related to the agents' official duties."  Capozzoli v. Tracey, 663 F.2d 654, 658 (5th

Cir. 1981).

        The United States argues that Plaintiff's tort claims must be dismissed

pursuant to § 2680(c) because they "arise[] from alleged torts 'committed incident

to the performance of an agent's duties under § 2680(c),' namely Agent Vega's

and Coy's stop of the truck Plaintiff was riding in and his subsequent arrest."

(U.S. MSJ at 6.)  In response, Plaintiff contends that § 2680(c) was not intended to

apply to the situation at hand here, where the detention of property—the

Truck—was merely incidental to the detention of its occupants.  The Court agrees.

In this case, the officers detained the vehicle in order to ask its occupants about their citizenship and immigration status, not to take any action with respect to the vehicle itself.  The United States has not provided the Court with any authority indicating that § 2680(c) applies to claims arising from investigatory stops, and, indeed, a recent Fifth Circuit case seems to foreclose its application in this case. Davila v. United States, 713 F.3d 248, 256 (5th Cir. 2013).

       In Davila, the plaintiff asserted a claim against the government under the FTCA for false imprisonment.  713 F.3d at 254.  Davila was detained at a United States Border Patrol checkpoint while CBP agents searched his car.  Id. at 257.  After his son fled in the vehicle, with CBP agents in pursuit, Davila was arrested and detained in a county jail.  Id.  It was this detention that gave rise to his claim for false imprisonment.  Id.  The Fifth Circuit held that the detention-of-goods exception did not apply to Davila's claim of false imprisonment because it was "unrelated to the vehicle or the detention thereof," and Davila did "not contend that the claim arose in respect of the detention of his vehicle."  Id.  The court took into account that "[n]o contraband had been found in the vehicle, [and] the search had long since ended" by the time Davila was arrested and detained.  Id.  In this case, no contraband was ever sought, and no search was ever conducted.  The

Court concludes that the detention-of-goods exception does not apply to Plaintiff's claims of false imprisonment or assault.

C.    Unlawful Acts Rule

Under Texas's unlawful acts rule, "no action may be predicated upon an admittedly unlawful act of the party asserting it." Denson v. Dallas Cnty. Credit Union, 262 S.W.3d 846, 855 (Tex. App. 2008).  "Courts have interpreted this defense to mean that if the illegal act is inextricably intertwined with the claim and the alleged damages would not have occurred but for the illegal act, the plaintiff is not entitled to recover as a matter of law." Carcamo-Lopez v. Does 1 through 20, 865 F. Supp. 2d 736, 763 (W.D. Tex. 2011) (citing Sharpe v. Turley, 191 S.W.3d 362, 366 (Tex. App. 1935)).  A plaintiff's illegal act is "inextricably intertwined" with his claim if "it is necessary for the plaintiff to prove, as part of his cause of action, his own . . . illegal transaction." Carcamo-Lopez, 865 F.Supp.2d at 763 (citing Marathon Oil Co. v. Hadley, 107 S.W.2d 883, 885 (Tex. App. 1935)).  A defendant may not claim a defense under the unlawful acts rule if the plaintiff

> can show a complete cause of action without being obliged to prove his own illegal act, although such act may incidentally appear, and may be explanatory even of other facts in the case, it being sufficient if his cause of action is not essentially founded upon something which is illegal.

Id.

38

Here, the United States argues that it may invoke the unlawful acts

doctrine because Plaintiff was engaged in illegal conduct—specifically, the United

States claims that he was present in the country illegally—at the time the alleged

false imprisonment and assault took place.  According to the United States, the

illegal conduct is therefore "inextricably interwined" with the FTCA claim.

Furthermore, the United States argues that Plaintiff's illegal conduct was a but-for

cause of the FTCA claim because he "would not have been arrested had he not

been illegally present in the United States."  (U.S. MSJ at 10.)  In response,

Plaintiff contends that his claims cannot be dismissed based on the unlawful acts

rule, because he does not "acknowledge alienage"—i.e., the allegedly illegal

conduct—in the Complaint.  (Doc. # 34 at 24.)  Plaintiff further asserts that, even

assuming he was in the country illegally, his actions were not "inextricably

intertwined" with his FTCA claim, because his immigration status is entirely

independent of his false imprisonment and assault claims against Defendants.

The Court agrees with Plaintiff.  His illegal act is not "inextricably

intertwined with the claim."  While Plaintiff's immigration status is certainly

incidental to this case, Plaintiff does not have to prove the illegality or legality of

his immigration status in order to bring a claim against Defendants.  The Court

therefore concludes that the unlawful acts rule does not bar Plaintiff's tort claims against the United States.

> D.   Failure to State a Claim

The United States also argues that Plaintiff's FTCA claims must be dismissed because Plaintiff has failed to allege facts sufficient to state a claim for false imprisonment or assault.

>> 1.   False Imprisonment

"The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law." Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).  There does not appear to be any dispute that the first two elements are satisfied in this case.  However, the United States claims that Plaintiff has failed to establish—or allege facts that, if true, would establish—the third.  See Sears, Roebuck & Co. v. Castillo, 693 S.W.2d 374, 376 (Tex. 1985) ("The plaintiff must prove the absence of authority in order to establish the third element of a false imprisonment cause of action.").  The United States contends that Plaintiff's false imprisonment claim fails "because [the Agents] had lawful authority [to] stop the pickup truck in order to conduct an immigration inspection, and to arrest Plaintiff. . . ."  (U.S. MSJ at 7.)  The United States is, of course, correct that Coy and Vega have "the authority to enforce

immigration laws without incurring tort liability."  (Id.)  However, the Agents do not have the lawful authority to detain individuals without reasonable suspicion in violation of the United States Constitution.  As discussed above, the Complaint alleges facts adequate to reasonably infer that the Agents did not have reasonable suspicion to conduct the investigatory stop at issue here.  Accordingly, Plaintiff has adequately alleged that he was detained without authority of law.

Citing to Texas Penal Code §§ 9.02, 9.03, and 9.51, the United States also argues that "Plaintiff's false imprisonment claim should . . . be dismissed because the Agents' actions were justified based on the circumstances in this case." (Agents' MSJ at 7.)  The United States does not further elaborate on this argument, and the language of the Texas Penal Code provisions cited to does not provide clarification.  The Court will not attempt to make the United States's argument for it.  Accordingly, the Court concludes that Plaintiff has stated a claim for false imprisonment upon which relief can be granted.  The United States's Motion is **DENIED** insofar as it seeks dismissal of Plaintiff's false imprisonment claim.

2.      Assault

A person commits the intentional tort of assault when he: "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as

41

offensive or provocative."  Tex. Penal Code § 22.01; see <u>Villafranca v. United States</u>, 587 F.3d 257, 260 (5th Cir. 2009) ("In Texas, the intentional tort of assault is identical to criminal assault.").  The United States maintains that Plaintiff has failed to plead facts sufficient to state a claim for assault.  (U.S. MSJ at 8.)  There is no question that Plaintiff alleges that Coy intentionally caused physical contact with him; the Complaint states that Coy "grabbed [Plaintiff] by the upper arm, [and] pulled him out of the Truck. . . ."  (Compl. ¶ 66.)  The Complaint also alleges facts sufficient for the Court to reasonably infer that, under the circumstances—during the course of an unjustified investigatory stop—Coy knew or should reasonably have believed that Plaintiff would regard the contact as offensive or provocative.

The United States argues that it is also entitled to Texas's "civil privilege defense," Tex. Penal Code § 9.51(a).  Section 9.51(a) provides that:

> A peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest . . . if:
>
> (1)    the actor reasonably believes the arrest or search is lawful . . . ; and
>
> (2)    before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer . . . , unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested.

Accepting Plaintiff's allegations as true, Coy could not reasonably have believed that Plaintiff's detention and subsequent arrest were lawful in light of the lack of reasonable suspicion supporting the traffic stop.  Accordingly, the Court concludes that Plaintiff has stated a claim for assault upon which relief can be granted, and **DENIES** the United States's Motion insofar as it seeks dismissal of that claim.

      E.    <u>Declaratory Relief Claims</u>

Plaintiff seeks declarations that the Agents exceeded their statutory and regulatory authority under 8 U.S.C. § 1357 when they stopped the Truck without reasonable suspicion.  The United States asserts that the Court does not have jurisdiction to hear Plaintiff's claims for declaratory relief.[4]  (Doc. # 36 at 3.) The Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, "is not an independent source of federal jurisdiction . . . ; the availability of such relief presupposes the existence of a judicially remediable right."  <u>Schilling v. Rogers</u>, 363 U.S. 666, 677 (1960).  Plaintiff apparently claims a right to judicial review of the Agents' actions

---

[4]  The United States asserted this argument for the first time in its reply brief. Normally, the Court would not address an argument to which the Plaintiff did not have an opportunity to respond.  <u>See</u> <u>United States v. Rodriguez</u>, 602 F.3d 346, 350 (5th Cir. 2010) ("For obvious reasons, our court generally will not consider an issue raised for the first time in a reply. . . .").  However, the Court must determine whether it has jurisdiction before addressing the merits of a case, and may examine its jurisdiction <u>sua sponte</u> if necessary.  <u>See</u> <u>Filer v. Donley</u>, 609 F.3d 643, 646 (5th Cir. 2012).

under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706.

The APA states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The APA defines "agency" as "each authority of the Government of the United States," 5 U.S.C. § 551(1), and "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. . . " 5 U.S.C. § 551(13).  Where judicial review is sought pursuant to the general review provisions of the APA, rather than pursuant to specific authorization in a substantive statute, the "agency action" in question must be "final agency action."  5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no remedy in a court are subject to judicial review."); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990).  The Supreme Court has directed courts to look to four factors when determining when agency action is final: "(1) whether the challenged action is a definitive statement of the agency's position, (2) whether the action has the status of law with penalties for noncompliance, (3) whether the impact on the plaintiff is direct and immediate, and (4) whether the agency expects immediate compliance."  Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv., 112 F.3d 1283, 1288 (5th Cir. 1997).

44

The Complaint states that "Defendant Coy's and Vega's actions constitute agency action within the meaning of the APA."  (Compl. ¶ 10.)  Plaintiff does not explain or support this assertion, and, indeed, it is almost certainly impossible to do so.  The Court is not aware of any authority that stands for the proposition that an individual agent's actions—such as a traffic stop or an arrest— qualify as "agency action," much less "final agency action."  The Court therefore concludes that Plaintiff has failed to establish that this Court has jurisdiction over his claims for declaratory relief pursuant to the APA.  The United States's Motion is **GRANTED** insofar as it seeks dismissal of Plaintiff's claims for declaratory relief.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART** the Agents' Motion (doc. # 12); **GRANTS** Plaintiff's Rule 56(d) Motion (doc. # 22); and **GRANTS IN PART** and **DENIES IN PART** the United States's Motion (doc. # 13).  Plaintiff's claims for declaratory relief against Defendants are **DISMISSED**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, June 21, 2013.

45

_____
David Alan Ezra
Senior United States District Judge